RECEIVED

2005 DEC 30  A 10: 29

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| MICHAEL JOHNSON,<br>AIS# 146037, | ) |
| | ) |
|     PLAINTIFF, | ) |
| | ) |
| | ) |
| VS. | )   CIVIL ACTION NO. 2:05CV1238-F |
| | ) |
| | ) |
| OFFICER MUNCHIE KEATON, COI | ) |
| AND CAPTAIN JEFFERY KNOX, | ) |
| | ) |
|     DEFENDANTS. | ) |

## COMPLAINT

COMES NOW the Plaintiff, Michael Johnson, by and through himself in the above entitled cause and moves this Honorable Court to grant relief by intervening in this matter, first by granting Plaintiff's "Motion for a Preliminary Injunction", and secondly, granting to the Plaintiff the relief he should be entitled by law, whereas the Plaintiff and other inmates' Constitutional Rights have been violated by the actions of the defendants in their individual and official capacities. The Plaintiff states in support the following:

## JURISDICTION

This Court has jurisdiction over Plaintiff's Federal claims

pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

## VENUE

The Middle District of Alabama is an appropriate venue under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

Plaintiff Michael Johnson is currently an inmate at the Easterling Correctional Facility, with an Alabama Inmates Serial Number of 146037, under the custodian custody of Warden III Gwendolyn C. Mosley.

Defendant Munchie Keaton, COI is currently employed by the Alabama Department of Corrections, assigned to the Easterling Correctional facility as Correctional Officer I, working on the second shift under the direct supervision of Lt. Wilson, COSI.

Defendant Captain Jeffery Knox is currently employed by the Alabama Department of Corrections, assigned to the Easterling Correctional Facility as Captain, head of security, an administrative position.

## FACT IN SUPPORT

The Easterling Correctional facility is located in Clio,

Alabama, 36017, at 200 Wallace Drive. Inmates are housed in six (6) separate Units. Dormitories 5, 6, 7, 8, 9, and 10, with approximately 1200 inmates. There are also units housing administrative and disciplinary segregation which are dorms 5 and 6A.

Plaintiff was transferred to the Easterling Correctional Facility on or about July, 1999, and was assigned to the law library as a law library clerk, on or around August, 1999, where he is presently assigned.

On December 8, 2005, at approximately 3:00 PM, Officer Munchie Keaton, COI, entered the Law Library and instructed Michael Johnson, Plaintiff, that he needed to shake-down his person and the law library. After completing the shake-down of the library, Officer Keaton showed interest in inmates legal documents. Johnson instructed defendant Keaton that most of the work was inactive and had not been destroyed. Only a few pieces were current; left for Johnson to read when time permits and give to the inmate(s) an accessment. Any active legal aide rendered had been properly documented on an "Inmate Service Agreement" and verified by the Library Supervisor, Officer Brian Gavins, COI. Defendant Keaton confiscated the legal documents.

Defendant Keaton directed Johnson to proceed to his assigned dormitory where he could shake-down his living area. Defendant Keaton instructed Johnson to wait in the lobby of dorm 7, after completing his shake-down for further instructions.

In approximately 30 minutes Lt. Wilson, (2nd Shift Commander), instructed Johnson to report to the administrative building to see Captain Knox. Upon arrival defendant knox asked Johnson what the legal work was? Johnson asserted that most of it was old, and never destroyed, some of it I was to read and try to make some sort of accessment for the inmate, which I haven't had the chance to do.

Defendant Knox stated, "You are not suppose to be doing legal work for inmates". He further stated, "You are doing legal work for officers". Johnson stated "that is not true, I have not done any legal work, nor have I been asked to do legal work for an employee". Defendant Knox stated, "If you are not going to talk, I'll lock you up, report to Lt. Wilson".

Lt. Wilson, instructed Johnson to leave, he would get back to him. On Sunday, December 11, 2005, Johnson was placed in the restricted segregation unit of dorm 6A, with circumstances as

-4-

follows:

"You Inmate Michael Johnson, BM/146037, did have several inmates legal work in your work area in the law library. Per Captain Knox, you did not have permission to do legal work for other inmates."

On Thursday, December 15, 2005, at approximately 3:00 PM, Johnson was sent to Defendant's Knox's office again. Defendant Knox asked once more about whether officers had asked about regulations or whether you (Johnson) aided them in legal matters? Johnson again denied the allegations. Defendant Knox stated, we searched you down looking for something else and we found this (indicating to the inmate's confiscated legal material), and that is the reason you are locked up.

Johnson explained again that he had approval/verification to have the legal work by his supervisor and that this has not been a problem since his assignment to the law library in August, 1999. Defendant Knox stated, "just because you have been doing it this way, doesn't mean it's right." Johnson stated, :there are no written rules or regulations provided prohibiting this procedure, nor to support your contentions." Johnson was returned to segregation.

On the same day, at approximately 8:00 PM, Johnson was sent to the Shift Commanders' Office (Lt. Wilson), and served a

citaiton for "possession of contraband" Rule #64 of the Alabama Department of Corrections Administrative Regulation #414, on the informal disciplinary procedure.

On December 15, 2005, Johnson placed a handmail request to Warden II Charles Davenport, advising him that Lt. Wilson had advised Johnson that he would probably see Warden III Gwendolyn Mosley about this matter. However, if the disciplinary came to him for approval or disapproval would he please consider the fact that Johnson has "Inmate Service Agreements for legal work in his possession. Warden II Davenport on a written reply ~~XXXXXXXXXXXX~~ ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~ stated: "No consideration given."

On December 19, 2005, at approximately 4:00 PM, Johnson was sent to Warden III Gwendolyn Mosley's Office, whereas Johnson explained to her what happened reference this matter. Warden Mosley, after interviewing with Johnson indicated that she would expunge the disciplinary and release Johnson into population.

## DISCUSSION IN SUPPORT OF COMPLAINT

Although Johnson was verbally accused of doing legal work for officer(s) by Defendant Knox, no mention of said assertion appears in the circumstances of detainment, or the informal disciplinary procedures. The circumstances state Johnson had several other inmates' legal work in his work area. It is not explained as to what the several other inmates meant. Johnson has no legal documents, nor active cases in the library.

Neither does Johnson have an assigned work area, where it has just been assumed that any legal documents found is Johnsons' and not others assigned in the law library. However, Johnsons' assignment was in fact a law clerk, since 1999 at Easterling Correctional Facility, which Johnsons' role has been to assist inmates in legal matters; to render inmates adequate, effective and meaningful access to the courts. Without legal assistance for inmates not knowing how to use the law library, the library would not be sufficient to constitute access to the courts.

Johnson usually does not prepare legal papers, whereas the confiscated legal documents were not pleadings created by or prepared by Johnson. It is rare that Johnson would actually prepare documents. However, even if Johnson acted as a jail-house

lawyer there are no known provisions which prohibit such action.

The United States Supreme Court in the case of **Johnson v. Avery**, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed 2d 718, held that absent the provisions of an adequate substitute (like where inmates could seek legal advice and document preparation), the state may not unreasonably interfere with services of jail house lawyers.

The state may not harass or intimidate jail-house lawyers for their law related activities. See **Young v. Calhoun**, 656 F.Supp. 970 (S.D.N.Y. 1987). In one case, the court found that prison officials had planted evidence against a jail-house lawyer in order to provide a pretext for disciplining him. The Court found that this course of conduct violated his rights.

Other issues arise where prison officials transfer a particular jail house lawyer from the prison that he or she served or when the jail house lawyer has been fired or suspended from being able to assist other inmates, which could form a right toward the person to be heard, instead of the one who assists. Basically, courts have ruled that there is a right to give legal assistance as well as to receive, for the latter is not possible without the former. **Vaughn v. Trotter**, 516 F.Supp. 886, 892 (M.D.Tenn. 1980).

As one Judge put it in the case of **Falzerand v. Collier**, 535 F.Supp. 800, 803, 10 Fed. R. Evid. Serv. 1013 (D.N.J. 1982)... Acess to the fullest law library anywhere is a meaningless and useless gesture in terms of the great mass of prisoners... To expect untrained laymen to work with entirely unfamiliar books, whose content they cannot understand, may be worthy of Lewis Carroll, but hardly satisfiesthe substance of the constituional duty.

Acess to full law libraries make about as much sense as furnishing medical services through books like: brain surgery self taught, or How to Remove your Own Appendix, along with scalpels, drills, hemostats, sponges and sutures.

Allegations against Johnson also state that Johnson did not have permission to do legal work. Although, Johnson has never been provided with written or verbal rules governing gaining permission to aide another inmate in their legal work. Johnson has inmate Service Agreements for all services rendered by him for inmates he assisted. Each agreement is verified by the library supervisor, Officer Brian Gavins, COI, which again demonstrates not only did Johnson have permission but was under direct supervision at all times.

## RETALIATION STATES A CLAIM

Johnson states a cause of action for the retaliatory elements enter here, and used by the defendants. Retaliation offends the Constitution because it threatens to inhibit exercise of the protected right. **Crawford – El v. Britton**, 523 U.S. 574, 588 (1998). Placement of an inmate in administrative segregation is actionable even if confinement there did not give rise to a protected liberty interest. **Zimmerman v. Tribble**, 226 F.3d 568, 573 (7th Cir. 2000). Even though inmate did not state claim for denial of access to library. Otherwise permissible conduct can become impermissible when done for retaliatory reasons. **Stanley v. Litscher**, 213 F.3d 340, 343 (7th Cir. 2000) (inmate stated claim for retaliatory transfer even though transfer did not involve a liberty interest) **Babcock v. White**, 102 F.3d at 275 (claim that official delayed inmates' transfer was actionable even if the official's actions did not independently violate the Constitution); **Hines v. Gomez**, 108 F.3d 265, 269 (9th Cir. 1997) Retaliatory punishment of ten-day confinement in segregation and loss of television privileges; Privileges may still base retaliation claims on harms that would not raise due process concerns.

Defendant Keaton had a duty not to violate the rights of the

Plaintiff, or other inmates in the performance of his duties. In fact, the very essence of his duties require him to up hold the Constitution of the United States and of the State of Alabama, pursuant to section 36-4-1 et. seq., **Code of Ala.**, 1975.

Defendant Keaton is not bound to follow any order(s) which violate the Constitution. In a conspired effort, Defendants Keaton and Knox made up a rule infraction to discipline Johnson. The Alabama Department of Corrections, (hereafter referred to as ADOC), in Administrative Regulation #403 defines contraband as: "The possession of any item not issued to the inmate by an ADOC employee, sold in the Canteen Store or approved by the Warden, to include possession of U.S. currency in any amount, or items in excessive amounts." Legal material is not included, and all legal mail is open and inspected in front of the inmate, and issued by a ADOC employee. ADOC Administrative Regulation #414 lists the only Rule Infraction reference legal assistance. Rule #83 defines itself as: "charging or accepting any compensation for legal assistance."

Defendant Keaton and Knox went totally away from the scope of ADOC rules and Regulations to retaliate against Johnson for

-10-

his assistance to legal matters.

At least seven (7) inmates were interrogated as to whether Johnson charged them for legal assistance.

### VIII CAUSES OF ACTION

Plaintiff supports the following claims by reference to the previous paragraphs of this complaint:

### COUNT I

The deliberate retaliation of defendants Knox and Keaton has deprived Plaintiff of enjoying privileges offered to other inmates, and his needed phone privileges, because of three deaths in his family within the last three months. A grandmother to die first, an uncle next, and on November 21, 2005, Johnsons' father died. Being that the death was out of state, Johnson had no chance of attending a funeral, and all he had to connect him was phone privileges in this time of hardship. Yet, he was deprived of this along with all other privileges enjoyed by the inmate population because of an accusation of doing legal work for officers, and rendering legal assistance to the inmate population; defendants retaliated.

### COUNT II

The deliberate retaliation of defendants Knox and Keaton has

deprived inmates of access to the Court, making the law library a place of fear and intimidation to do legal documents.

## VIII PRAYER FOR RELIEF

(1)   Declare that the acts and omissions described herein violated Plaintiff's Rights under the Constitution and Laws of the United Staes;

(2) Enter a preliminary and permanent injunction ordering defendants Keaton, Knox, their successors, agents, employees, and all persons acting in concert with them to stop their practice of retaliatory measures against the plaintiff and all other inmates; properly train correctional staff, and their supervisors concerning the First Amendment Rights of inmates to access to the Courts; return and stop a procedure of confiscating inmates legal documents preventing them from responding to court orders in a timely fashion etc..., especially from the law library; and implement adequate policies concerning inmate rights to access to the court.

(3) enter judgment in favor of plaintiff for nomimal, compensatory, and punitive damages, as allowed by law against each defendant jointly and severally.

(4) Order such additional relief as this Court may deem just and proper.

Respectfully submitted this ___27th___ day of ___December___,
20 __05__.

                              Respectfully submitted,

                              Michael J. _____
                              Michael Johnson
                              146037 (7A-96)
                              200 Wallace Drive
                              Easterling Correctional Facility
                              Clio, Alabama 36017-2615

-13-