RECEIVED

2006 MAR 28  A 9: 46

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MICHAEL JOHNSON, | ) |
| PLAINTIFF, | ) |
| | ) |
| VS. | ) 2:05-CV-1238-WKW |
| | ) |
| MUNCHIE KEATON, ET AL., | ) |
| DEFENDANTS. | |

### OPPOSITION TO THE DEFENDANT'S SPECIAL REPORT

COMES NOW the Plaintiff, Michael Johnson, by and through himself and moves this Court pursuant to Rule 56 of the Civil Rules of Federal Procedure and in accord with this Court's Order of March 9, 2006, offering the following in support:

(1) The defendant's tend to be confused as to the plaintiff's claim for relief. Plaintiff has made properly and specifically his claim.

"Johnson states a cause of action for the retaliatory elements used by the defendants in falsifying claims to punish and isolate him from general population."

(2) In respondents own admission the following is documented:

(a) Page 3 (Special Report) defendant knox received

information at 9:00 PM that inmate Michael Johnson was processing legal material for <u>an employee</u> while he was working in the ECF Law Library.

 (b) Page 4 (Special Report) defendant Knox/Keaton shook plaintiff down reference legal work.

 (c) No contraband was found in plaintiff's living area.

 (d) Plaintiff was placed in segregation.

 (3) The defendants further provides this Court with ADOC Adminsitrative Regulation #403 which on page 16 of 26 defines Rule #64 (Possession of Contraband) as follows:

"The possession of any item not issued to the inmate by an ADOC employee, sold in the canteen store or approved by the warden, to include possession of U. S. currency in any amount, or items in excessive amounts."

The rule infraction itself clears Johnson of any wrong doing where it is clearly stated first in the affidavit of Munchie Keaton at page 2 <u>"no contraband was found"</u> in plaintiff's living area; also at page 4 of the defendant's Special Report is states in part: <u>"No contraband was found in the inmate's living area"</u>

 (4) According to defendant Knox Warden Mosley informed Knox, "she had allowed Johnson to assist inmates with their legal work, but had not authroized plaintiff to possess other inmate's legal work."

## DISCUSSION

In January, 2001, Warden III, Gwendolyn Mosley, summoned

-2-

Inmate Johnson to the administrated building. Upon Johnson arrival, Warden Mosley instructed Johnson that Inmate Henry Ford was complaining that he could not get anyone to help him with legal work. He alleged an inmate had charged him $100.00 and failed to do his work. Warden Mosley told Johnson to take his transcripts and aide him with his legal work without charge.

Plaintiff's Exhibit F (Response to request for Legal Assistance) demonstrates Johnson's findings on Mr. Ford, and provided Warden Mosley a copy of the same. Once this was done, Johnson returned the transcripts of Mr. Ford to him.

It is evident that Johnson has been approved to have legal documents in his possession to assist inmates, as stated by plaintiff to defendant Knox.

Defendant Knox states in his affidavit that on December 8, 2005, at approximately 9:00 AM, I received some information that inmate Michael Johnson, was processing legal material for an employee while he was working in the facility law library. This assertion is totally false, where ECF Records demonstrate that the Law Library was opened at 12:00 PM on that day by Officer Bryan Gavins, COI, (See Plaintiff's Exhibit J - Affidavit of Michael Johnson). Johnson could not have been in the law library processing an Officers legal material at 9:00 AM on that day. (See also Johnson's Motion for Production).

Amazingly, defendant Knox is the only one who alleges contraband was in Johnson's possession. Also, in his Affidavit

(Defendant Knox) clearly demonstrates that he did not render Johnson any Rules or Procedures beforehand, or prior to his shake-down. He states only after the shake down he rendered instructions, stated as follows:

"A search was conducted on inmate Johnson and his property. During the search several other inmates legal work was found in inmate Johnson's possession. <u>I summoned inmate Johnson to my office and advised him that he could not possess other inmates' legal work without approval.</u>"

It would seem logical to have rendered these instructions before the incident, nowhichs was a Defendant Knox rule violation that no one else knew about. Johnson had no way of knowing that this action would be in violation, however, still Johnson continued to demonstrate that he had approval for any and all work he did, or legal work in the law library, which is not in his possession.

However, the defendants provided this Court with a copy of ADOC Adminstrative Regulation #403, and Restricted Privilege Dorm S.O.P., but failed to include ADOC regulation #214 (See Plaintiff's Motion for Production).

ADOC Administrative Regulation #214 clearly within itself demonstrates that Johnson did nothing wrong, and the charges were fabricated to attempt punishment for Johnson's role as an alleged

Note: No contraband was found in Johnson possession. Legal work was confiscated from the law library.

-4-

jail house lawyer.

Johnson's living area in which he controlled had no contraband as reflected in defendant Keaton's affidavit, yet, the legal work confiscated in the law library was not controlled by him.

Regulation #214 states in part:

G. The warden's designee will coordinate and supervise the law library services in the institution as follows:

2. Inmate law library clerks are supervised.

9. Instruct inmate law clerks that they are not to be licensed attorneys or in any way appear to be engaged in an unauthorized practice of law. Inmate law clerks should also be instructed that they shall not charge for legal services.

Further, this action included a disciplinary which was signed by Johnson, along with ADOC Form 601 (Incident report). See Plaintiff's Motion for Production), which was not included in defendant's Special Report.

ADOC's Administrative Regulation #302 (Incident Reporting) is a requirement when a disciplinary is written, as well as placement in segregation. (See Plaintiff's Motion for Production). This information was not included in the Defendant's Special report.

It is erroneous to say Johnson could assist inmates with their legal work, but could not possess it. In the Library is

where legal work is done. This was a retaliatory action, by Defendant Knox, where it didn't matter what was found Defendant Knox wanted to punish Johnson for a role of legal assistance.

No one to this point has considered that:

(1) Johnson does not have controll of the law library and works under the supervision of Officer Bryant Gavins, as reflected by ADOC Administrative Regulation #214.

(2) Johnson had approval by his supervisor reference legal work done or maintained in the library.

(3) Defendant's own admission is that Johnson was searched for processing legal work for <u>an employee</u>, yet no mention of who, or what is entered in the pleading. At no time, is it alleged that Johnson was charging for legal services, or accepting favors. It is clear that he (Johnson) was alleged to be processing legal material.

Plaintiff's <u>Exhibit C</u> (Easterling Correctional Facility, Hot Dorm Assignment Notification) demonstrate elements not consistent with defendant Knox's affidavit. It fails to reflect an investigation of an employees legal material or that Johnson was alleged to be charging for legal services. Circumstances which wasn't provided to this Court state:

"You, Inmate Michael Johnson, B/146037, did have several other inmates legal work in your work area in the law library. Per Captain Knox you did not have permission to do legal work for other inmates."

Johnson hand wrote a letter to Warden II, C. Davenport on December 15, 2005, (See Plaintiff's Exhibit E), reference the disciplinary. Johnson indicated he had approved Inmate Service Agreements which were approved by the Library Supervisor. Therefore, asking for consideration of the same. Warden Davenport returned the letter indicating "No consideration Given".

This case is no different than where prison officials would plant contraband on inmates for their law related activities. Here, defedant Knox, claimed that at 9:00 AM on December 8, 2005, he recieved information that Johnson was processing legal material for an employee while he was working in the facility law library.

No mention of where or who this alleged information was obtained. It is only assumption that this contention actually occurred. Defendant knox claims Johnson could not possess other inmates legal work without approval. Yet, it is clear that Johnson had approval. This fact did not matter to either defendant Knox or warden Davenport.

No reference was made in written form accusing Johnson of charging for legal services, until it was found that Johnson had no employees legal material, Johnson had not violated any rules in reference to his legal activities. Therefore, the institution went on a witch hunt for Captain knox to render punishment to Johnson. Interrogating inmates trying to get them to say Johnson charged for legal services.

-7-

Plaintiff's Exhibit A - (Affidavit of Christopher Jordan) was questioned by Sgt. Logan, COII, as to whether Inmate Johnson had been doing legal work for him. Inmate Jordan denied those allegations and explained the libraries' possession of his legal papers.

Plaintiff's Exhibit B (Affidavit of Joe Rudolph), was questioned by Lt. D. C. Wilson as to hislegal work, and asked several times as to whether Johnson charged him.

Plaintiff's Exhibit D (Affidavit of Donald Grier) states that no one contacted him concerning his legal work, yet he seeked the assistance of Johnson because he is the law clerk in the law library, and Johnson had never charged him.

Defendants go as for as saying on page 2 (Defendant's Special Report) the following:

"Plaintiff asserts that Keaton and knox conspired to fabricate a rule infraction to discipline plaintiff and <u>it appears he alleges that he was charged incorrectly and in fact, he was not guilty of possession of contraband, but in fact his violation should have been a Rule 83 - accepting compensation of legal services.</u>

Johnson made references to Rule 83 of ADOC Administrative Regulation #414 (Accepting compensation of legal services) because this is the only written rule which has reference to legal assistance. (See Page 10 plaintiff's complaint).

Now defendants tend to use this assertion as a self admission of a rule infraction. This action is totally erroneous. Defendant Knox alleges he received information from an unnamed source, that

-8-

Johnson was preparing legal material for an employee, also unnamed.

Although, this allegation is erroneous informants are high commodity at Easterling, even though most information is false. The classic informant is a person within the institution who trades information usually to gain leniency for their own violations, or a friends, as well as because of envy of the person being snitched on.

The use of informants at Easterling has become a flourishing socialegal practice, characterized by secrecy, unfettered prison official discretion and informal negotiations. Prison officials at Easterling recruit and rely on even greater numbers of informants in making basic decisions about investigation and charges. This process about investigation and charges, is totally void of fairness or due process, and inmates are under constant pressure to snitch.

Snitches increase rule violations and threaten the essence of rehabilitation, where most of their information is false, they are tolerated or under punished by prison officials because they are useful. When one has enough integrity, he is seeked out to punish or allowed information to be fabricated against him when charges are enlarged for disciplinary purposes.

Item V of defendants' Special Report must fail stating in part:

"Plaintiff was found guilty in possession of other inmates legal documents and did not have the warden's approval to possess said documents, <u>the plaintiff is guilty of violating the plain meaning of this regulation.</u>"

Plaintiff relies again on ADOC regulation #214(G): "<u>The Warden's designee will coordinate and supervise the law library services in the institution.</u>

Plaintiffs approval was rendered by written and signed documentation of Officer Bryan Gavins, Law Library Supervisor and warden's Designee under the principles of ADOC Administrative Regulation #214. Plaintiff had no rule violation for these retaliatory measures used by Knox and Keaton.

Further, Defendant Knox's action in fabricating information, or using informants to seek information to punish Johnson for his legal activities placed even further security risks upon the inmate population to use Defendant Keaton on a target shakedown when he had at least 11 administrative officers at his use, and two gym officers as well as 3 dorm officers. This procedure placed undue risk on several hundred inmates, on a already short shift. Officer Keaton was allowed to leave his post for hours to shake Johnson down, where there were officers all ready in the gym, an officer, who is the law library supervisor in the law library, and at least three officer in the dorm where Johnson was shook down, any having the ability and skill to perform the shakedown Officer Keaton performed on Johnson. Shift Records will demonstrate that Defendant Knox created a security and safety issue, in a persistent effort to punish Johnson for his legal activities. (See Plaintiff's Motion for Production).

When situations involving Johnson arise, it seems that the Plaintiff is handled differently than what other inmates would have been. The Defendants failed and cannot demonstrate a legitimate penological reason for the action taken, especially when Johnson has no history of rule violation within the institution. Defendant Knox failed to demonstrate who rendered the allege information concerning Johnson and an employee, as well as whether this person has been reliable in the past, or what reason Defendant Knox should have believed him.

## **LEGAL PRINCIPLES**

The Seventh Circuit in <u>Burse v. Hudkins</u>, 584 F.2d 223 (7th Cir. 1978), has outlined the analysis that courts must make when faced with the assertion that a prisoner has suffered retaliation because of the exercise of a protected right.

Several legal principles regarding prisoner writ writing are well established. A prisoner has a right to be his own jail house lawyer. <u>Sigafus v. Brown</u>, 416 F.2d 105 (7th Cir. 1969). Likewise a prisoner has the right to assistance from other inmates. <u>Johnson v. Avery</u>, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed 2d 718 (1969). This right to assist is only restricted is whether such restrictions are reasonably related to legitimate penological interests. Compare <u>Shaw v. Murphy</u>, 532 U.S 223, 226, 121 S.Ct. 1447, 1477, 149 L.Ed 2d 420 (2001).

Here, the Plaintiff, Michael Johnson, does not challenge a ADOC regulations, Rule or Procedure, which were violated as a basis of a first amendment right. The only alleged rule, is the one fabricated or created by Defendant Knox, which cannot be demonstrated that it has a legitimate penological objective. In fact, it tends to dampen the essence of rehabilitation, where Defendant Knox contends that it was contraband to have legal work in the law library. A rule only mentioned after finding such.

The First Amendment prohibits jail and prison officials from

retaliating against inmates who report complaints, file grievances, or file lawsuits. **Allah v. Seiverling**, 229 F.3d 220, 224 (3d Cir. 2000); **Babcock v. White**, 102 F.3d 267, 275 (7th Cir. 1996); **William v. Dept. of Corrections**, 208 F.3d 681, 682 (9th Cir. 2000); **Penrod v. Zavaras**, 94 F.3d 1399, 1405 (10th Cir. 1996). See also **Crawford-El v. Britton**, 523 U.S. 574, 588 (1998) (Stating that the reason why retaliation offends the Constituion is that it threatens to inhibit exercise of the protective right). Retaliation can take many forms; e. g., refusing to provide hygiene material, reading or interfering with an inmate's legal papers, placing an inmate in segregation or poor living conditions, transferring an inmate to a different cell or different prison, threats, even assaults. Importantly, government actions, while standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right. **Theddeus v. Blatter**, 175 F.3d 378, 386 (6th Cir. 1999); See also **Allah v. Seiverling**, 229 F.3d at 224-25 (allegedly retaliatory placement of inmate in administrative segregation was actionable, even if confinement there did not give rise to protected liberty interest; **Zimmerman v. Tribble, 226 F.3d 568, 573 (7th Cir. 2000) (even though inmate did not** state claim for denial of access to liberty, otherwise

permissible conduct can become impermissible when done for retaliatory reasons); **Stanley v. Litscher**, 213 F.3d 340, 343 (7th Cir. 2000) (Inmate stated claim for retaliatory transfer even though transfer did not involve liberty interest); **Babcock v. White**, 102 F.3d at 275 (claim that official delayed inmate's transfer was actionable even if the officials actions did not independently violate the Constitution); **Rouse v. Benson**, 193 F.3d 936, 939 (9th Cir. 1999) (Retaliation transfer is actionable); **Hines v. Gomez**, 108 F.3d 265, 269 (9th Cir. 19997) (allegedly retaliatory punishment of ten-day confinement in segregation and loss of television privileges; prisoners may still base due process concerns). **Pratt v. Rowland**, 65 F.3d 805, 806-07 (9th Cir. 1995) (to succeed on his retaliation claim, the inmate need not establish an independent constitutional interest in either assignment to a given prison or placement in a single cell...).

In **Dawes v. Walker**, 239 F.3d 489, 491 (2nd Cir. 2001) (courts must approached prisoner claims of retaliation with skepticism and particular care); but see **Johnson v. Stovall**, 233 F.3d 486, 489 (7th Cir. 2000) (to state a cause of action for retaliation, a complaint need only allege a chronology of events from which retaliation may be infered.

In **Shaw v. Murphy**, 532 US 223, 149 L.Ed 2d 420, 121 S Ct 1475 (2001), the court reasoned that the First Amendment does not render prison inmates protection above and beyond the protection that is normally accorded to prisoner's speech.

In the case at hand, Johnson does not challenge his first amendment right with respect to that of a prison regulation. Here, Johnson is not in violation of a rule of regulation and defendant Knox and Keaton cannot demonstrate that their action serve a legitimate penological objective other than to punish Johnson for his legal activities. Those actions which he is assigned to do, as well as those which were false on part of defendant Knox.

The <u>Shaw</u> court went on to say:

(1) if the connection between the regulation and the asserted goal is arbitrary or irrational, then the regulation fails, irrespective of whether other factors tilt in its favor,

(2) there must be a valid and rational connection between the prison regulation and the legitimate and neutral government interest put forward to justify the regulation. and

(3) courts should also consider (a) the existence of alternative means of exercising the right that are available to inmates, (b) the impact that accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally, and (c) the absence

of ready alternatives available to the prison for achieving the governmental objectives.

Here, the defense used by the defendants must fail. Defendants state:

(1) Johnson was found to have in his possession legal work of other inmates without approval as he was only authorized to assist other inmates with their legal documents without charge. He was placed in dorm 6(A) pending disciplinary action for <u>possession of contraband</u>. (See Plaintiff Motion for Production).

ADOC Administrative Regulation #306, mandates that contraband be deposed of by that regulation. However, most of the contraband was sent back to the library on December 23, 2005, notation was made in file (see Plaintiff's Exhibit G) that legal documents was picked up fromt he Captain's Office (Defendant Knox) and reutrned to the law library. If this legal work is contraband, then why was it placed in the law library, where defendant's stated, Johnson did not have permission to have, and that it was contraband. The remainder of the legal documents had been returned to the inmates.

Again, defendant Knox and Keaton's action had no ligitimate penological objective other than to retaliate against Johnson for his legal activities and lack of cooperation in questioning.

Defendant Knox's responsibility for the safety and security of the institution far outweighs the alleged circumstances related to Johnson, yet, he compromised this duty to fulfill a witch hunt on Johnson. Removing defendant Keaton from a valid assigned post (See Plaintiff's Motion for Production) to shake down Johnson in the library and in the presence of two (2) other officers capable of performing that duty and assigned to the area, and to shake down Johnson in the dormitory and in the presence of three (3) other officers capable of performing the same duty.

Defendant Keaton was not assigned to these duty posts, and was relieved of his post of an already short personnel shift to serve the purpose of this witch hunt. The duty roster will demonstrate this was an extreme breach of institutional security.

In **Hewitt v. Helms**, 459 US 460, 473, 103 S Ct 564, 74 L.Ed 2d 675 (1983), the Former Chief Justice Rehnquist remarked: "the safety of the institution's guards and inmates is perhaps the most fundamental responsibility of the prison administration.

Defendant Knox failed at his duty, just to retaliate personally against Johnson, thus compromising the health, safety, and security of the institution to do so. These are actions totally unrational in this prison setting. Placing other

inmates and officers in elevated danger to go on a witch hunt for one (1) inmate, which the same result could have been accomplished in a different manner.

In **Bower v. Devito**, 686 F.2d 616, 618 (7th Cir. 1982), if the state puts a man in a position of danger from private persons and then fails to protect him, it will not be hard to say that its role was merely passive; it is as much as active role as if it had thrown him into a snake pit.

By defendant Knox creating a fabricated atmosphere to retaliate and punish Johnson, he fails in two areas. The First Amendment Right of Johnson, and the rights of those inmates to be protected under the Eighth Amendment because he compromises the safety of inmates and officers to place punishment on Johnson. In **Farmer v. Brennan**, 511 US 825, 114 S Ct 1970, 128 L.Ed 2d 811 (1994). The Supreme Court made clear and held explicity what was apparent from these precedents. There is a right to be protested from harm. In an opinion by Justice Souter, the Court began with the proposition that the Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement.

Defendant Knox knows of the shortage of officers already present at Easterling, and is versed with the need of securing duty post assignments to officers. His duty is to decrease the present danger, not increase it by asserting reckless elements for the purpose of pursuing one (1) inmate.

Just as every other prison accross the State of Alabama, Easterling Correctional Facility is severely overcrowded which has resulted in a lack of privacy, deleterious physical conditions, inadequate sanitation, decreased availability of basic necessities such as <u>Staff Supervision</u>. It has heightened the level of tension and violence among prisoners.

With these elements in mind, better management is needed to use resources and manpower whereas security is not decreased trying to fulfill a personal agenda, instead of fulfilling the goal of the entire institution.

Respectfully submitted,

*Michael John* (signature)

Michael Johnson
146037
200 Wallace Drive
Easterling Correctional Facility
Clio, Alabama 36017-2615

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing upon the Honorable Jeffery H. Long, Assistant Attorney General, for the State of Alabama, at 11 South Union Street, Montgomery, Alabama 36130, by placing a copy of the same in the United States Mail on this 22 day of March, 2006.

_____
Michael Johnson