IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MICHAEL JOHNSON, #146037,        )
                                 )
        Plaintiff,               )
                                 )
v.                               )       CASE NO. 2:05-CV-1238-MHT
                                 )              [WO]
                                 )
MUNCHIE KEATON, et al.,          )
                                 )
        Defendants.              )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983 action, Michael Johnson ["Johnson"], a state inmate and

prison law library clerk, challenges the constitutionality of actions taken against him during

his incarceration at the Easterling Correctional Facility in December of 2005 by

correctional officers Munchie Keaton and Jeffery Knox, the named defendants.

Specifically, Johnson complains these officers (i) initiated disciplinary action against him

for possession of contraband and placed him in the restricted privilege/hot dorm in

retaliation for his providing legal assistance to other individuals, (ii) denied inmates access

to the courts, and (iii) conspired to initiate the aforementioned disciplinary action.[1]

Johnson seeks declaratory, injunctive and monetary relief for the alleged violations of his

---

[1]Under the administrative regulations of the Alabama Department of Corrections, possession of contraband is defined as "[t]he possession of any item not issued to the inmate by an ALDOC employee, sold in the Canteen Store or approved by the Warden, to include possession of U.S. currency in any amount, or items in excessive amounts." *Defendants' Exhibit 3 - Administrative Regulation No. 403 -- Court Doc. No. 14-2* at 16.

constitutional rights.

Defendants Keaton and Knox filed a special report and supporting evidentiary materials addressing the plaintiff's claims for relief. Pursuant to the orders entered in this case, the court deems it appropriate to treat this report as a motion for summary judgment. *Order of March 9, 2006 - Court Doc. No. 15*. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and the plaintiff's response in opposition to this motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## I. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir.2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c), as amended December 1, 2007, (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden.  Thus, the burden shifts to the plaintiff to establish, with evidence beyond the pleadings, that a genuine issue material to each of his claims for relief exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial.").  A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

---

[2]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only." Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, ---, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (citation omitted). Consequently, to survive the properly supported motion for summary judgment filed in this case, Johnson is required to produce "sufficient evidence" which would be admissible at trial supporting his claims of various constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are

4

insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will

preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine

issue of material fact.  *Beard*, 548 U.S. at ---, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Johnson has failed to demonstrate requisite genuine issues of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

## II.  FACTS

In July of 1999, Johnson entered the Easterling Correctional Facility and soon thereafter "was assigned to the law library as a law library clerk...."  *Plaintiff's Complaint - Court Doc. No. 1-2* at 3.  On December 8, 2005, defendant Knox received information that Johnson had at some time been "processing legal material for an employee while [Johnson] was working in the Facility Law Library."  *Defendants' Exhibit 1 - Affidavit of Jeffery Knox -- Court Doc. No. 14-2* at 1.  Based on this information, defendant Knox ordered a search of Johnson and the property located in his library work area.  Defendant Keaton performed the search during which the parties agree Keaton discovered the legal work of other inmates.  Johnson explained to "Keaton that most of the work [discovered during the law library search] was inactive and [just] had not been destroyed.  Only a few pieces were current; left for Johnson to read when time permits and give the inmate(s) an accessment [sic]."  *Plaintiff's Complaint - Court Doc. No. 1-2* at 3.  Johnson further advised Keaton "[a]ny legal aide rendered had been properly documented ... and verified by the Library

Supervisor, Officer Brian Gavins.... Defendant Keaton [nonetheless] confiscated the legal documents." *Id.* Upon completion of the law library search, Keaton conducted a search of Johnson's assigned living area but found no papers belonging to other inmates during such search.

Due to Johnson being found in possession of other inmates' legal documents, Knox "advised [Johnson] that he could not possess other inmates' legal work without approval. I advised inmate Johnson that he could assist other inmates with their legal work but he could not charge the inmates or exchange any items for assisting them with the legal work. Inmate Johnson informed me that Warden Gwendolyn Mosley approved for him to do other inmates' legal work. I informed inmate Johnson that if Warden Mosley did not give him permission to possess the legal material, he would receive disciplinary action for possession of contraband. I contacted Warden Mosley and asked if she had given inmate Johnson permission to possess other inmates' legal material. Warden Mosley advised me that she instructed inmate Johnson to assist other inmates with their legal work, but he was not authorized to possess their legal materials. Inmate Johnson was placed in Dorm 6A (Hot Dorm) [on December 11, 2005] pending disciplinary action for violation of Rule #64 - Possession of Contraband." *Defendants' Exhibit 1 - Affidavit of Jeffery Knox -- Court Doc. No. 14-2* at 1-2. Knox assigned Johnson to the restricted privilege dorm in accordance with the standard operating procedure of Easterling Correctional Facility. *Defendants' Exhibit*

8

*4 - Supplemental Affidavit of Jeffery Knox -- Court Doc. No. 14-5* at 1.

During his initial discussion with defendant Knox, Johnson denied the accusation regarding the preparation of legal work for correctional employees. *Plaintiff's Complaint - Court Doc. No. 1-2* at 4. On December 15, 2005, Knox and Johnson again discussed the alleged legal work for employees and Johnson again denied this allegation. *Id*. at 5. Knox then informed Johnson that his possession of legal documents belonging to other inmates constituted the basis for his placement in the restricted privilege dorm. *Id*. (The "confiscated legal material" of other inmates "is the reason you are locked up."). "Johnson explained again he had [the law library supervisor's] approval/verification to have the legal work" and argued to Knox that he therefore had not violated any rules or regulations. *Id*. Later this same day, Johnson received a disciplinary citation for violation of Rule #64, possession of contraband. *Id*. at 6. However, a few days later, upon completion of the investigation of this matter, correctional officials released Johnson from the restricted privilege dorm and "no [further] corrective action was taken." *Defendants' Exhibit 1 - Affidavit of Jeffery Knox -- Court Doc. No. 14-2* at 2.

Johnson complains that the defendants undertook various adverse actions against him in retaliation for exercising his First Amendment rights. *Plaintiff's Complaint - Court Doc. No. 1-2* at 12. Johnson maintains that "because of an accusation of doing legal work for officers, and rendering legal assistance to the inmate population - defendants retaliated." *Id*. The defendants deny this allegation and maintain they placed Johnson in

the restricted privilege dorm and issued the disciplinary citation solely because Johnson

was in "possession of other inmates' legal work without permission[,]" a violation of the

rule prohibiting the possession of contraband by an inmate.  *Defendants' Exhibit 1 -*

*Affidavit of Jeffery Knox -- Court Doc. No. 14-2* at 2.  Johnson also alleges the actions of

the defendants deprived him and other "inmates of access to the court...."  *Plaintiff's*

*Complaint - Court Doc. No. 1-2* at 13.

### III.  DISCUSSION

### A.  Eleventh Amendment Immunity

To the extent Johnson sues each of the defendants in their official capacity, the

defendants argue they are immune from suit in their official capacities pursuant to the

Eleventh Amendment.[3]  Official capacity lawsuits are "in all respects other than name, ...

treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A

state official may not be sued in his official capacity unless the state has waived its

Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465

U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the

state's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, [59], 116 S.Ct. 1114, 1125,

134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see*

*Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and

---

[3]Eleventh Amendment immunity does not foreclose suits for injunctive and/or declaratory relief; rather, if applicable, it forecloses suits for compensable damage awards.

Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997); *Powell v. Barrett*, 496 F.3d 1288, 1304, 1308 (11th Cir. 2007) (state defendants sued in their official capacity for monetary damages are immune from suit under the Eleventh Amendment).

In light of the foregoing, it is clear that the defendants are state officials entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994). Thus, the defendants are entitled to absolute immunity from any claims for monetary relief presented against them in their official capacities. *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B. The Retaliation Claim

Johnson alleges the defendants charged him with a disciplinary and placed him in the restricted privilege dorm in retaliation for allegedly "doing legal work for officers" and due to his "rendering legal assistance to the inmate population" which constituted a violation of his right of access to the court. *Plaintiff's Complaint - Court Doc. No. 1-2* at 12. The defendants, however, maintain the adverse actions about which Johnson complains occurred exclusively due to his violation of institutional rules prohibiting the possession of contraband which includes within its definition Johnson's possession of other

inmates' legal materials.  The affidavits and evidentiary materials submitted by the defendants support this assertion.

To prevail on a constitutional claim of retaliation against prison officials, an "inmate must establish ... three elements: (1) his speech [or action] was constitutionally protected; (2) the inmate suffered adverse action such that the [defendants'] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech [or action]; and (3) there is a causal relationship between the retaliatory action and the protected speech [or act].  *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)" *Smith v. Mosley*, ---- F.3d ----, 2008 WL 2609353, *4 (11th Cir. July 3, 2008); *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999).

Federal law recognizes "that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' [*Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807 (1974)].  As the *Martinez* Court acknowledged, 'the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.' *Id.*, at 404-405, 94 S.Ct., at 1807. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources...." *Turner v. Safley*, 482 U.S. 78, 84-85, 107 S.Ct. 2254, 2259 (1987).  Correctional officials are therefore "accorded latitude in the administration of prison affairs[,]" *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081 (1972), which

necessarily includes "the withdrawal or limitation of many [inmate] privileges and rights." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974) (quotation marks and citation omitted); *Shaw v. Murphy*, 532 U.S. 223, 229, 121 S.Ct. 1475, 1479 (2001), quoting *Pell*, 417 U.S. at 822, 94 S.Ct. at 2804, ("In the First Amendment context, ... some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'"). In accordance with this principle, an inmate's rights established under the First Amendment are not protected if allowing such protection is "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822, 924 S.Ct. at 2804.

The prohibition on an inmate's possession of documents prepared by other inmates, legal or otherwise, is "reasonably related to legitimate security interests.... Undoubtedly, communication with other felons is a potential spur to criminal behavior...." *Turner*, 482 U.S. 91-92, 102 S.Ct. at 2262-2263; *Shaw v. Murphy*, 532 U.S. 223, 231, 121 S.Ct. at 1480 ("Prisoners have used legal correspondence as a means for passing drugs or weapons..."). Moreover, the contraband regulation does not deprive prisoners of all means of access to the court as the prisoner seeking access may (i) himself utilize the prison's law library in preparation of legal documents, (ii) receive aide from a law library clerk without relinquishing possession of his legal documents to the inmate clerk, and/or (iii) with proper authorization from correctional officials, may allow the inmate clerk to obtain possession

13

of his documents for the limited purpose of providing legal assistance. "The prohibition on [inmate communications] is reasonably related to valid correctional goals. The rule is content neutral, it logically advances the goals of institutional security and safety .... and it is not an exaggerated response to those objectives." 482 U.S. at 93, 107 S.Ct. at 2264. The holding of *Turner* is applicable to both legal and nonlegal correspondence among inmates as "no ... special right" to provide legal advice is afforded under the First Amendment. *Shaw*, 532 U.S. at 228, 121 S.Ct. at 1478. Thus, the rule prohibiting the possession of contraband by an inmate, to include possession of legal documents of other inmates without proper authorization, is reasonably related to penological interests and therefore a valid limitation on any First Amendment right alleged by Johnson. "As the court in *Thaddeus-X* stated, 'if a prisoner violates a legitimate prison regulation, he is not engaged in "protected conduct," and cannot proceed beyond step one. 175 F.3d at 395." *Smith v. Mosley*, *supra* at *5. The court therefore concludes that Johnson's possession of documents belonging to other inmates is not constitutionally protected conduct and does not establish the first element of a retaliation claim.[4]

---

[4]To the extent Johnson asserts in his response opposing summary judgment that he did not possess the documents of other inmates as they were not found on his person or in his assigned living area but in the law library over which he does not have sole access, this assertion contradicts the statements made in his sworn complaint. Specifically, in his complaint and even in the majority of his summary judgement response, Johnson concedes his possession of the documents but argues he had obtained requisite authorization for such possession. Additionally, Johnson acknowledged possession of the legal materials by admitting he "was to read and try to make some sort of [assessment] for the inmate" but at the time of the search simply had not yet "had the chance to do so." *Plaintiff's Complaint - Court Doc. No. 1-2* at 4. This court may disregard Johnson's affidavit filed in response to the motion for summary judgment to the extent it directly contradicts the statements contained in his

In an effort to proceed on his retaliation claim, Johnson further argues that the defendants retaliated against him (i) because they believed he had assisted correctional officers in legal matters and (ii) due to his providing legal assistance to other inmates, i.e., acting as a jailhouse lawyer. It is undisputed that an inmate has no constitutional right to provide legal assistance to free-world individuals. Moreover, Johnson possesses no constitutional right to provide legal assistance to other inmates. *Shaw*, 532 U.S. at 227-231, 121 S.Ct. at 1478-1480 (the First Amendment does not secure to prisoners a freestanding right to assist other inmates in legal matters); *Bass v. Singletary*, 143 F.3d 1442, 1446 (11th Cir. 1998) (inmates have no independent right under the First Amendment "to render legal assistance to or receive such assistance from other inmates."); *Johnson v. Rodriguez*, 110 f.3d 299, 311 n. 15 (5th Cir. ) (providing legal assistance to other prisoners "is not in and of itself a constitutional right."), *cert. denied*, 522 U.S. 995, 118 S.Ct. 559); *Tighe v. Wall*, 100 F.3d 41, 42-43 (5th Cir. 1996) (holding defendants entitled to summary judgment on inmate's claim of retaliation where inmate based claim on First Amendment right to give legal assistance to fellow inmates as there is no independent right to provide legal assistance to other inmates); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993) ("[N]o constitutional right to assist [other inmates with legal matters] exits" independent of the recipient inmate's right of access to the courts.); *Williams v. Nix*, 1 F.3d 712, 716 (8th

---

sworn complaint. *See Van T. Junkins and Assoc. V. U. S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

Cir. 1993) ("[A]n individual inmate does not have a constitutional right to 'practice' jailhouse law."); *Smith v. Maschner*, 899 F.2d 940, 950 (10th Cir. 1990) (Prison inmate "does not have a protected interest in providing legal representation to other inmates."); *Gassler v. Rayl*, 862 F.2d 706, 707-708 (8th Cir. 1988) (An inmate possesses "no right to be ... a jailhouse lawyer independent of the right of access to the court. Accordingly, the transfer of a prisoner for 'writ-writing' does not in and of itself constitute the violation of a protected right.").

> [S]pecial protection ... [is not accorded] for speech that includes legal advice. Augmenting First Amendment protection for inmate legal advice would undermine prison officials' ability to address the "complex and intractable" problems of administration. *Turner*, *supra*, at 84, 107 S.Ct. 2254. Although supervised inmate legal assistance programs may serve valuable ends, it is "indisputable" that inmate law clerks "are sometimes a menace to prison discipline" and that prisoners have an "acknowledged propensity ... to abuse both the giving and the seeking of [legal] assistance." *Johnson v. Avery*, 393 U.S. 483, 488, 490, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). Prisoners have used legal correspondence as a means for passing contraband and communicating instructions on how to manufacture drugs or weapons.... *see also Turner*, *supra*, at 93, 107 S.Ct. 2254 ("[P]risoners could easily write in jargon or codes to prevent detection of their real messages"). The legal text also could be an excuse for making clearly inappropriate comments, which "may be expected to circulate among prisoners," *Thornburgh v. Abbott*, 490 U.S. 401, 412, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989), despite prison measures to screen individual inmates or officers from the remarks.

*Shaw*, 532 U.S. at 231, 121 S.Ct. at 1480 (citation to brief omitted).

In light of the foregoing, it is clear that Johnson has no independent constitutional right to provide legal assistance to either free-world individuals or fellow inmates.

Consequently, such actions do not constitute an activity protected by the First Amendment and Johnson cannot rely on these actions to demonstrate the first element of a retaliation claim - that he had engaged in a protected activity.

Assuming *arguendo* Johnson engaged in a protected activity when assisting other inmates with legal matters, he has nevertheless likewise failed to satisfy the third requisite element of a retaliation claim - a causal connection between his constitutionally protected activity and the adverse actions of the defendants. The causal connection inquiry focuses on the "subjective motivation of the defendants[,]" *Thaddeus-X*, 175 F.3d at 399, and this court must therefore determine "whether the defendants were subjectively motivated to discipline" Johnson because he provided legal assistance to other inmates. *Smith v. Mosley*, *supra* at *5. The subjective motivation issue is resolved by most courts under the burden-shifting formula set forth in *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977). This formula requires that the plaintiff first meet "his burden of establishing that his protected conduct was a motivating factor behind any harm" and then "the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399, referencing the *Mt. Healthy* motive analysis.

It is essential that federal courts "carefully scrutinize retaliation claims" brought by

17

prisoners challenging actions of correctional personnel. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2nd Cir. 1983). This is [necessary because prisoners'] ... claims of retaliation are ... easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation-- can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by showing "that his conduct was constitutionally protected, [a factor assumed for purposes of this portion of the Recommendation,] and that this conduct ... was a 'motivating factor'" behind the adverse actions of the defendants. *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. At 576. Merely alleging the ultimate fact of retaliation, however, is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166. Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation. *Morales*, 278 F.3d at 131; *Bennett v.*

*Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations."). If an inmate meets his burden with appropriate evidence, the burden of production shifts to the defendants to show that they "would have reached the same decision as to [plaintiff's discipline] even in the absence of the protected conduct." *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576.

Johnson makes the conclusory and speculative assertion that the defendants placed him in the hot dorm and initiated disciplinary action against him due to his providing legal assistance to fellow inmates. The defendants deny this allegation and argue the adverse actions resulted solely from Johnson's violation of prison rules, i.e., Johnson's possession of contraband in the form of other inmates' legal materials. The undisputed facts likewise demonstrate that Johnson served as an inmate law clerk for over six (6) years without incident regarding his provision of legal assistance to other inmates.

This court must "carefully scrutinize retaliation claims" presented by prisoners, *Woods*, 60 F.3d at 1166, and evaluate such claims "with skepticism and particular care[,]" *Dawes*, 239 F.3d at 491. Johnson offers only his conclusory allegation of ultimate fact that the defendants retaliated against him for providing legal assistance to other inmates. The record before the court is devoid of direct evidence from which a reasonable fact finder could infer that Johnson's legal activities were a motivating factor in the defendants' decisions to place Johnson in the restricted privilege dorm and initiate disciplinary action

19

against him.  The circumstances taken as a whole are, at best, questionable that such an inference could be made.  However, even assuming the motivating factor issue in Johnson's favor, it is clear under *Mt. Healthy* that the defendants would have disciplined Johnson even in the absence of his providing legal assistance to fellow inmates as he possessed documents belonging to other inmates, a violation of institutional rules, which constituted a legitimate security concern.  *Turner*, 482 U.S. 91-92, 102 S.Ct. at 2262-2263. Consequently, the defendants are further entitled to summary judgment on the retaliation claim as Johnson fails to establish by sufficient evidence a causal relationship between the alleged protected activity and any adverse action taken against him.  *Beard*, 548 U.S. at ---, 126 S.Ct. at 2578.

### C.  Access to Courts

Johnson complains the adverse actions of the defendants "deprived inmates of access to the court [by] making the law library a place of fear and intimidation to do legal documents."  *Plaintiff's Complaint - Court Doc. No. 1-2* at 13.

1. <u>Lack of Standing - Claim Alleged on Behalf of Other Inmates</u>.  Standing is a cornerstone of American jurisprudence on which jurisdiction lies.  "[A] litigant may only assert his own constitutional rights or immunities."  *McGowan v. Maryland*, 366 U.S. 420, 429 (1961), citing *United States v. Raines*, 362 U.S. 17, 22 (1960); *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 218-219 (1974) (plaintiff must assert

a legally cognizable injury in fact before federal courts have jurisdiction).  "The essence of a standing question is whether the plaintiff has alleged 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for the illumination of difficult constitutional questions[.]'  *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703 7 L.Ed.2d 663 (1962)."  *Saladin v. City of Milledgeville*, 812 F.2d 687, 690 (11th Cir. 1987); *Harris v. McRae*, 448 U.S. 297, 320 (1981) (same).

    Standing involves two aspects.  The first is the minimum "case or controversy" constitutional requirement of Article III.  *Saladin*, 812 F.2d at 690.  "To satisfy this 'irreducible' constitutional minimum required for standing, a litigant must show 1) that he personally has suffered an actual or prospective injury as a result of the putatively illegal conduct; 2) that the injury can be fairly traced to the challenged conduct; and 3) that the injury is likely to be redressed through court action."  *Saladin*, 812 F.2d at 690, citing *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982); *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  If any element is lacking, a plaintiff's claim is not viable.  In addition, the Supreme Court has established several requirements for standing based on prudential considerations.  *Saladin*, 812 F.2d at 690 (internal citations omitted) ("The Supreme Court has ... stated that, in addition to these essential constitutional requirements, a court should consider the case in light of three

principles which might counsel judicial constraint, referred to as 'prudential'

considerations.... Those considerations are 1) whether the plaintiff's complaint falls within

the zone of interests protected by the statute or constitutional provision at issue; 2) whether

the complaint raises abstract questions amounting to generalized grievances which are

more appropriately resolved by the legislative branches; and 3) whether the plaintiff is

asserting his or her own legal rights and interests rather than the legal rights and interests

of third parties").

With respect to Johnson's allegation regarding a denial of access to the courts for

all inmates at Easterling Correctional Facility, Johnson lacks standing to assert the

constitutional rights of other persons as he is not "asserting his ... own legal rights and

interests [but] rather ... the legal rights and interests of third parties." *Saladin*, 812 F.2d

at 690; *Allen v. Wright*, 468 U.S. 737, 751 (1984). These claims therefore entitle Johnson

to no relief and summary judgment on such claims is due to be granted in favor of the

defendants.

2. Denial of Access to the Courts to Johnson. Throughout the pleadings filed in this

case, Johnson references a denial of his right of access to the courts. The law directs that

incarcerated persons are entitled to "a reasonably adequate opportunity to present claimed

violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S.

817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified and

limited the right to assistance recognized in *Bounds*. Specifically, the Court held that "an inmate alleging a violation of *Bounds* must show actual injury" arising from the alleged inadequacies in the law library, legal assistance program or access provided by officials. *Lewis*, 518 U.S. at 349. In identifying the particular right protected by *Bounds*, the Court explained that "*Bounds* established no ... right [to a law library or to legal assistance]. The right that *Bounds* acknowledged was the (already well-established) right of ***access to the courts*.... [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id*. at 350-351 (emphasis in original) (citations omitted). The Court further opined *Bounds* did not require "that the State ... enable the prisoner to ***discover grievances***, and to ***litigate effectively*** once in court.... To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] ... the Constitution requires." *Id*. at 354 (emphasis in original).

The Court similarly rejected the argument that the mere claim of a systemic defect, without a showing of actual injury, presented a claim sufficient to confer standing. *Id*. at 349. Moreover, *Lewis* emphasized that a *Bounds* violation is related to the lack of an inmate's capability to present claims. 518 U.S. at 356. "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability -- the

23

capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. When any inmate ... shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates" the requisite actual injury. *Lewis*, 518 U.S. at 356. Finally, the Court discerned that the injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions of confinement.... [I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone." *Id*. at 356-357. "[T]he Constitution does not require that prisoners ... be able to conduct generalized research, but only that they be able to present their grievances to the courts - a more limited capability that can be produced by a much more limited degree of legal assistance." *Id*. at 360. The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts. *Id*. at 356. A federal district court must "'scrupulously respect[] the limits on [its] role,' by 'not ... thrust[ing] itself into prison administration' and instead permitting '[p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements.' [*Bounds*, 430] U.S. at 832-833, 97 S.Ct. at 1500." *Id*. at 363.

Johnson has utterly and completely failed to come forward with any evidence that the actions about which he complains deprived him of the ***capability*** of pursing claims in this or any other court. Throughout the proceedings in this case, Johnson has repeatedly demonstrated that he is both proficient and prolific at presenting and arguing the claims of his choice to this or any other court. Nothing before the court indicates that the actions about which Johnson complains improperly impeded or adversely affected his efforts to pursue nonfrivolous legal claims. Thus, Johnson does not establish he suffered the requisite injury, *Lewis*, 518 U.S. at 356, and the defendants are therefore entitled to summary judgment on any claim related to Johnson's access to the courts. *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).[5]

### D. The Conspiracy Claim

Johnson alleges the defendants engaged "[i]n a conspired effort" to discipline him for violating institutional rules. *Plaintiff's Complaint - Court Doc. No. 1-2* at 11. "Conspiring to violate another person's constitutional rights violates section 1983. *Dennis v. Sparks,* 449 U.S. 24, 27 101 S.Ct. 183, 186 (1980); *Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir.1988), *overruled in part on other grounds by Whiting v. Traylor,* 85 F.3d 581, 584 n.4 (11th Cir.1996)." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th

---

[5]Additionally, even assuming Johnson had standing to assert an access to court claim on behalf of other inmates, there is no evidence presented in this case that the defendants' actions denied any other inmate of a reasonably adequate opportunity to present nonfrivolous legal claims. Thus, Johnson has not shown that other inmates suffered the actual injury required by applicable federal law. *Lewis*, 518 U.S. at 356.

2002). "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff 'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.' *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir.1990), *cert. denied,* 500 U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991).... [T]he linchpin for conspiracy is agreement ..." *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992). In order for a plaintiff "to establish the 'understanding' or 'willful participation' required to show a conspiracy, ... [he] must [produce] some evidence of agreement between the defendants.... For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence ... will not suffice; there must be enough of a showing that the jury could reasonably find for that party.' *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990)." *Rowe*, 279 F.3d at 1283-1284. Merely "stringing together" adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy. *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

The evidentiary materials submitted by the defendants rebut Johnson's self-serving, conclusory allegation that they entered into a conspiracy to deprive him of his constitutional rights. Specifically, the aforementioned defendants deny they acted in concert or otherwise to violate Johnson's constitutional rights. The court has carefully reviewed the pleadings filed by the plaintiff. Johnson fails to proffer any evidence,

significantly probative or otherwise, that the named defendants "reached an understanding" to violate his rights or committed an "actionable wrong to support the [alleged] conspiracy." *Bailey*, 956 F.2d at 1122; *Bendiburg*, 909 F.2d at 468. Johnson merely makes the bald, speculative statement that the defendants conspired against him with respect to initiation of disciplinary action and placement in the hot dorm. Such bare statement, however, does not constitute evidence of a conspiracy between the defendants. *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984). Thus, there is no evidence to support Johnson's conspiracy theory, and summary judgment is due to be granted in favor of the defendants on this claim. *Bailey*, 956 F.2d at 1122.

### E. Fabricated Disciplinary Claim

Johnson contends the defendants "made up a rule infraction to discipline" him because his actions did not constitute possession of contraband. *Plaintiff's Complaint - Court Doc. No. 1-2* at 11. As previously noted, contraband includes documents of other inmates, both legal and nonlegal, which the offending inmate does not have requisite authorization to maintain in his possession. The defendants assert they initiated disciplinary action because Johnson possessed other inmates' legal documents without proper authorization. Thus, the defendants do not admit that the information on which they based the disciplinary is false. While *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991) establishes a constitutional claim for the knowing use of false information by prison

27

officials, the instant case is controlled by *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.), *cert. denied*, 459 U.S. 1043, 103 S.Ct. 462 (1982). In *Slocum*, the Court held that prisoners do not state a due process claim by merely asserting that false or erroneous information may exist. Moreover, "prisoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim." *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001). Johnson simply asserts that the defendants based the disciplinary action on frivolous accusations. This allegation does not state a viable claim for relief and the defendants are therefore entitled to summary judgment on the false disciplinary claim.

### F. Placement in the Restricted Privilege Dorm

To the extent the complaint can be construed to allege a violation of due process regarding Johnson's placement in the restricted privilege dorm for his violation of an institutional rule, Johnson is likewise entitled to no relief.

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being

28

transferred to a mental hospital).  The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'  *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests).  In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state."  *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.  *Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"); *Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be confined in a particular institution and may be subjected to an interstate transfer without implicating the Constitution).  Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification level, the privileges bestowed upon him or confinement in the least

restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485, 115 S.Ct. at 2301 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). Thus, the deprivations imposed upon Johnson did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300. This court must therefore determine whether the actions about which Johnson complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court noted,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin*, 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin*, we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.*, at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.
> "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum*. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected

by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*, at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).

After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.*, at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-223, 125 S.Ct. 2384, 2393-2394 (2005).

Applying the *Sandin* inquiry, the court concludes that the temporary loss of privileges and confinement in the restricted privilege dorm "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon the plaintiff. *Id.* at 485. In light of the foregoing, it is clear that the aforementioned sanctions fail to "impose[] atypical and significant hardship on [Johnson] in relation to the ordinary incidents of prison life." *Id.* at 484. Consequently, the plaintiff's theory of liability under the law as established in *Sandin* is without merit, and summary judgment is therefore due to be granted in favor of the defendants on any potential due process claim.

### IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be dismissed with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before August 25, 2008 the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 13th day of August, 2008.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

32